IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR DARNELL THOMAS,<br>    Plaintiff,<br><br>v.<br><br>R.N. MARTYNUSKA, Medical Contractor,<br>FCI Loretto, *et al.*,<br>    Defendants | :<br>:<br>:<br>:  Case No. 3:20-cv-181-SLH-KAP<br>:<br>:<br>:<br>: |

Report and Recommendation

Recommendation

The amended complaint, ECF no. 10, should be served in part and dismissed in part with leave to amend.

Report

Plaintiff, a federal inmate formerly in custody at F.C.I. Loretto, has filed a complaint was filed, ECF no. 4, an amended complaint, ECF no. 8, and a second amended complaint, ECF no. 10. Plaintiff also, between the second and third versions, filed a motion for extension of time for leave to file an amended complaint, ECF no. 9, that can be denied as moot. The operative complaint that must be screened under the Prison Litigation Reform Act is ECF no. 10.

Since plaintiff is proceeding *in forma pauperis*, 28 U.S.C.§ 1915(e)(2) commands:

(2)    Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --
    (A)    the allegation of poverty is untrue; or
    (B)    the action or appeal --
        (i)    is frivolous or malicious;
        (ii)   fails to state a claim on which relief may be granted; or
        (iii)  seeks monetary relief against a defendant who is immune from such relief.

Also applicable to this case is 28 U.S.C.§ 1915A, which commands that:

(a)    Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a

1

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
      (b)    Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
           (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
           (2)    seeks monetary relief from a defendant who is immune from such relief.

In the amended complaint, plaintiff advances what he divides into nine claims against personnel at Loretto pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). The first six are effectively one claim under the Eighth Amendment for deliberate indifference to his medical needs, *see* Carlson v. Green, 446 U.S. 14 (1980). The defendants as to these claims are Martynuska; Lt. Robinson; Weidlich; Swindell; Bradley; Moser; Taggart; Golden; Bender; McLaughlin; John Doe #1; John Doe #3; Miles; Murphy; and Wirfel.

A prison official violates the Eighth Amendment by "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The taxonomy of deliberate indifference claims recognized in this circuit includes cases where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. Pearson v. Prison Health Service, 850 F.3d 526, 538 (3d Cir.2017). A defendant is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff alleges that on the morning of July 12, 2018, P.A. Golden was making her sick call rounds in the SHU and he complained that he was suffering from pain in his scrotum, and that in 2013, he had been hospitalized for this pain and diagnosed as having chronic epididymitis. ECF no. 10 at 13. Golden conducted an examination of plaintiff in the SHU medical room, but did not consult plaintiff's medical records. After taking plaintiff's blood pressure and temperature, and finding he had a high temperature, Golden prescribed acetaminophen. Id.

On July 18, 2018, plaintiff advised prison officials in writing of his history with chronic epididymitis. Id. On July 19, 2018, RN Bender examined plaintiff. Id. at 14.

2

Bender advised plaintiff that he was aware of the serious risk associated with plaintiff's condition.  Id.  Bender performed a urinalysis and erroneously concluded that plaintiff had a urinary tract infection, for which Dr. Kim Swindell prescribed sulfamethoxazole. Id.

On August 5, 2018, in response to requests from plaintiff for sick calls, Bender conducted another urinalysis and told plaintiff that he would provide him with additional medication.  Id.  Later that day, Bender reversed his course and told plaintiff that, according to Dr. Swindell, plaintiff should write to Swindell directly and to stop him during  his SHU visits.  Id. Plaintiff submitted several requests to see Swindell with no response.  Swindell did not conduct SHU rounds during this time.  Id. at 15. Also during plaintiff's time in the SHU, he wrote requesting the antibiotics that had been prescribed for him during his hospitalization in 2013. Id. at 18. These requests were not responded to.

On September 2, 2018, plaintiff began to suffer severe abdominal and back pain in addition to his already severe scrotal and testicular pain which eventually resulted in plaintiff being sent to the Altoona Hospital.  Id. at 20.  Events that day began when R.N. Martynuska came to plaintiff's cell and he informed her that his pain was so bad, he could not turn over in bed, despite having taken 8-10 ibuprofen within the past two hours.  Id. Martynuska told plaintiff she would check his medical records concerning his history of chronic epididymitis and would check back in the evening.  Id.  Plaintiff's pain had increased further in severity.  Id. at 20-21.  When Martynuska returned, she called Lt. Robinson, the shift supervisor, who arrived with McLaughlin.  Id. at 21.  Martynuska inquired as to how plaintiff had become "so sick so fast," and she and Robinson accused plaintiff of "faking" and "lying."   Id. In the early afternoon plaintiff also asked C.O. Salyards to call the medical department. Id. at 20.

Martynuska departed.  Id.  Lt. Robinson threated to leave plaintiff in his cell unless he stood and was handcuffed behind his back.  Id.  Plaintiff's request for a wheelchair was denied.  Id.  Plaintiff's cellmate assisted him in standing and being cuffed, then Robinson and McLaughlin dragged plaintiff, who could not walk from the pain, about three quarters of the way down a corridor until plaintiff fell to his knees in excruciating pain.  Id.  At that point, Martynuska, who had been watching, lifted plaintiff's ankles and helped carry him to the medical room for examination. Id. at 21-22.

While awaiting an ambulance, plaintiff was left alone with Lt. Robinson, who called plaintiff a "scumbag nigger drug dealer."  Robinson then punched plaintiff in the side of his head, threatening plaintiff that when he returned to general population, Robinson and his co-workers were going to beat him.  Id. at 23.  A yelling match ensued, during which

Robinson "made reference to" a grievance plaintiff had filed against a corrections officer named Jozwiak. Id. Robinson repeatedly told plaintiff that he was faking it and that plaintiff was the type "who liked to file grievances against good white correction officers and it didn't matter because Plaintiff wasn't going to be getting any money and that nothing would be done." Id. at 25.

After McLaughlin and Murphy returned to the medical room, Robinson ordered Murphy to remove plaintiff's sneakers and socks. Id. McLaughlin and Murphy later admitted they knew of no policy which dictate such action and that they had never taken such action before. Id. This resulted in plaintiff, when he was discharged from the hospital that night, having to walk nearly 100 yards while barefoot over rough, dirty concrete to get in the prison vehicle. Id. at 25.

Plaintiff was taken to the Altoona Hospital emergency room, where a Doctor Shepherd determined that he was in septic shock. Id. at 17, 19. Shepherd prescribed an antibiotic, Levaquin, which was handed to C.O. Murphy. A C.O. McLaughlin was instructed to alert prison authorities that it was imperative that plaintiff take the antibiotic for ten days and to call if there were problems. Id. at 19. Upon return to Loretto, Martynuska apparently confiscated the prescribed antibiotic, stating that plaintiff was not permitted to have the "narcotic" in his cell. Id. Rather, C.O. John Doe #1 "was tasked to deliver ibuprofen to plaintiff throughout the third shift watch." Id.

On September 3, 2018, as a result of, *inter alia*, the results of a scrotal ultrasound, and at the request of hospital officials, plaintiff was returned to the hospital where he remained until September 27, 2018. Id. at 19. Plaintiff alleges that he has permanent injuries.

Plaintiff fails to make sufficient allegations to support a plausible claim for deliberate indifference against Golden. The allegations reflect that Golden responded to plaintiff's claims of pain, performed an examination, took his vitals and prescribed medication for the high temperature and pain he was experiencing. Plaintiff asserts that Golden should have done more in light of his report of his 2013 bout with epididymitis; however, a disagreement in treatment and even malpractice on the part of Golden would not be sufficient to state a claim of deliberate indifference.

Plaintiff similarly fails to make sufficient allegations to support a plausible claim for deliberate indifference against Bender, who, like Golden, responded to plaintiff's complaints and provided treatment. If that treatment was inadequate, plaintiff has not alleged that it was knowingly so .

4

Plaintiff also fails to allege sufficient facts against John Doe # 1, the third shift C.O. who delivered him ibuprofen. Plaintiff alleges that this medicine was inadequate but does not allege any fault on the part of the defendant.

Plaintiff does allege sufficient facts to support a claim for deliberate indifference against Swindell. If plaintiff's allegations are accepted, Swindell made no response at all to an inmate's requests for medical help and did not even appear in the SHU for almost two months.

Likewise, plaintiff alleges sufficient facts to support a claim of deliberate indifference against Martynuska and Robinson for their actions and inactions on September 2, 2018, in either denying or delaying medical treatment for plaintiff. No claim is stated against C.O. McLaughlin, because as a corrections officer he had no duty to be the point of contact between Shepherd and Martynuska, and he took no other action affecting the medical care provided to plaintiff.

Plaintiff makes no allegations as to the personal involvement of Weidlich, Bradley, Moser, Taggart, John Doe #3, Miles, Murphy or Wirfel in the denial or delay of treatment of his medical needs. Plaintiff makes a conclusory statement that each of these defendants had knowledge of, and an opportunity to prevent and remedy, the injurious violations of plaintiff's constitutional rights in this regard; however, there are no factual allegations to support a claim against these defendants.

Thus, the claim for deliberate indifference should be dismissed against Golden, Bender, John Doe #1, Weidlich, Bradley, Moser, Taggart, John Doe #3, Miles, Murphy and McLaughlin and Wirfel. It should go forward against Swindell, Martynuska, and Robinson.

Plaintiff's seventh claim is for excessive force against Martynuska, Lt. Robinson, Weidlich, Swindell, Bradley, Moser, Taggart, Golden, Bender, McLaughlin, Miles, Murphy and Wirfel. This claim relates to Robinson allegedly punching plaintiff in the head on September 2, 2018, when plaintiff was alone with him. Plaintiff's allegations are sufficient to support a claim of excessive force against Lt. Robinson. See Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (use of force "maliciously and sadistically for the very purpose of causing harm" violates the Eighth Amendment).

Plaintiff asserts that the remaining named defendants "failed to properly supervise their subordinates in order to stop their use of excessive force and brutality," and that these defendants "knew of violations of Plaintiff's constitutional rights and refused to do anything to rectify the violations." ECF no. 10 at 24. These defendants had no personal

involvement in the use of excessive force, and plaintiff has no legal right to have these defendants investigate or punish Robinson after the fact. The claim for excessive force should be dismissed against Martynuska, Weidlich, Swindell, Bradley, Moser, Taggart, Golden, Bender, McLaughlin, Miles, Murphy and Wirfel. It should go forward against Robinson only.

Plaintiff's eighth claim is for retaliation against Martynuska, Lt. Robinson, Weidlich, Swindell, Bradley, Moser, Taggart, Golden, Bender, McLaughlin, Miles, Murphy and Wirfel. The three elements of a retaliation claim are: (1) that the plaintiff took some action itself protected by the constitution; (2) that the defendant took adverse action against the plaintiff sufficient to deter a person of ordinary firmness from persisting in his conduct; and (3) that there was a causal connection between the plaintiff's protected conduct and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003).

Plaintiff alleges that Lt. Robinson punched him in retaliation for plaintiff having filed grievances against other prison personnel. ECF no. 10 at 25. Plaintiff has alleged sufficient facts to support that claim.

Plaintiff further makes allegations in support of this claim against Weidlich. Plaintiff alleges that when he returned to Loretto from the hospital on September 27, 2018, Weidlich issued a threat that he desired to have 25 days added on to plaintiff's sentence. Id. at 25-26. Plaintiff further alleges that Weidlich has interfered in the administrative remedy process. Id. Plaintiff does not allege a retaliatory motive for these acts, however, or that anything further ever came of this verbal threat. There are not enough allegations of fact to support a claim for retaliation against Weidlich.

Plaintiff finally alleges that A.W. Taggart made threatening statements on October 17, 2018, that were retaliatory. Id. at 26. On that date, Taggart stopped at plaintiff's cell while conducting rounds and issued threats to plaintiff, stating that he had watched the video tape of the extraction on September 2, 2018, and that plaintiff had lied in his grievance about the incident. Id. Taggart told plaintiff he was going to make sure he was found guilty at his disciplinary hearing and that he was sent to a prison in Arizona, away from his family, and that he would be raped. Id. Nothing further ever came of this verbal unpleasantness, and the allegations are insufficient to support a claim for retaliation.

Thus, the retaliation claim should go forward against Robinson only.

Plaintiff's ninth and final claim is a Farmer v. Brennan claim for failure to protect. Plaintiff relates several episodes involving C.O. Jozwiak, Henry, Reesy and SIS Yingling,

but does not expressly name any defendant. The first incident took place before plaintiff's placement in the SHU when Yingling met with plaintiff to discuss anonymous reports to Yingling that plaintiff had assaulted several unidentified inmates. Id. at 27. Allegedly, Yingling failed to investigate "several prison attacks" and to stop the circulation of a printout of a court case which discussed a confidential informant with the same name as plaintiff. Id. Plaintiff does not allege any attack on him after this, and he has no legal right to have Yingling investigate or punish anyone.

The second incident involves a drawing displayed at the prison leisure library. Plaintiff contends that employment there is dominated by white sex offenders who resent him because he is black and intolerant of their offenses. A library worker named Scott Markle (a white sex offender) drew an offensive picture of an illiterate 57-year-old black student of plaintiff mocking his use of a cane to walk. Id. at 20. The drawing was captioned "Cane Man," and "Cotton Pickin." Id. at 27. Plaintiff removed the drawing and delivered it to education specialist Mr. Reesy. Id. at 8, 28. Mr. Reesy failed to "rectify" and report this racial problem to SIS. Id. at 8, 27. Again, as offensive as it is, Markle's drawing gave plaintiff no right to have Reesy investigate or punish anyone.

In the third incident, C.O. Jozwiak heard inmate Ralph Fisher threaten plaintiff with a false PREA report but took no action to "protect" plaintiff. Id. at 28. Plaintiff reported this and the other two incidents to Yingling and Henry, who failed to investigate these matters. Once more, plaintiff has no legal right to have Jozwiak, Yingling, or Henry investigate or punish anyone.

In general, a claim based on a prison official's failure to protect an inmate from fellow inmates requires plausible allegations of an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. at 837. Plaintiff's frustration that those who threatened him went unpunished, like a "fear of assault," is insufficient to state an excessive risk that would support an Eighth Amendment failure to protect claim. *See generally* Hudson v. Kennedy, 2013 WL 4778700, at *10 (W.D. Pa. Sept. 5, 2013), citing Smith v. Pennsylvania Dept. of Corr., 2011 WL 4573364, at *8 (W.D. Pa. Sept. 30, 2011) (citations omitted).

Finally, plaintiff names Case Manager Coordinator Spasoto as a defendant but makes no allegations against her in the complaint. She should be dismissed as a defendant.

The Court of Appeals, in Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir.2002) and similar cases, directs district courts to allow plaintiffs in civil rights cases leave to amend unless that amendment is "futile" or "inequitable." The Court cannot say it would be futile for plaintiff to amend his complaint to remedy the deficiencies identified

herein. If he does not, the complaint should be served on the defendants as stated above.

Pursuant to 28 U.S.C.§ 636(b)(1), plaintiff can within fourteen days file written objections to this Report and Recommendation. Plaintiff is advised that in the absence of timely and specific objections, any appeal would be severely hampered or entirely defaulted. See EEOC v. City of Long Branch, 866 F.3d 93, 100 (3d Cir.2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error). Plaintiff is also given leave to amend his complaint within the same time. Plaintiff can, if he wants, both amend his complaint and file objections. If he chooses not to amend the complaint, the case will go forward on the claims identified. If he chooses to amend the complaint, he must file an amended complaint raising all claims against all parties.

DATE: September 29, 2021

Keith A. Pesto,
United States Magistrate Judge

Notice by U.S. Mail to:

Victor Darnell Thomas Reg. No. 11021-068
F.C.I. Berlin
P.O. Box 9000
Berlin, NH 03570-9000